UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAMILO HOLGUIN, ASTRID COELLO, and TOMAZ
LASKAWSKI,

Plaintiffs,

-v-

QUALITY FURNITURE NY LLC, BARGAIN HOUSE
BY QUALITY FURNITURE INC., BARGAIN HOUSE
BY QUALITY FURNITURE NY INC., and ISSA
NASRALLAH,

Defendants.

CIVIL ACTION NO. 23 Civ. 0004 (AT) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Camilo Holguin, Astrid Coello, and Tomaz Laskawski brought this action against

Defendants Quality Furniture NY LLC, Bargain House by Quality Furniture Inc., and Bargain

House by Quality Furniture NY Inc. (collectively, the "Corporate Defendants"), and Defendant

Issa Nasrallah, alleging, among other claims, that Defendants failed to pay Plaintiffs minimum

wages and overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New

York Labor Law ("NYLL"). (*See* ECF 1, Compl. ¶¶ 1-2.) Your Honor issued an order providing that

Plaintiffs were entitled to a default judgment and referring the action to the Honorable James L.

Cott for an inquest on damages. (*See* ECF 67, Order of Default J.; ECF 68, Order.) On January 31,

2024, the reference was reassigned to me. Plaintiff seeks compensatory damages in the

amount of $131,008.57; liquidated damages in the amount of $131,008.57; statutory damages

under the Wage Theft Prevention Act (the "WTPA") in the amount of $30,000; attorneys' fees

in the amount of $12,094.50; costs in the amount of $527.55; and prejudgment interest for

Holguin at a rate of $8.98 per day from December 15, 2021 until the day final judgment is

entered, prejudgment interest for Coello at a rate of $2.48 per day from April 1, 2022 until the day final judgment is entered, and prejudgment interest for Laskawski at a rate of $20.84 per day from May 17, 2021 until the day final judgment is entered. (*See* ECF 70, Proposed Findings of Fact and Conclusions of Law ("Proposed Findings").)

For the reasons set forth below, I respectfully recommend that recommend that the motion for a default judgment should be granted and that judgment should be entered against Defendants in favor of Plaintiffs, with Plaintiffs to be awarded:

1. Damages in the amount of $397,796.76, consisting of: (a) $21,450 in total unpaid minimum wages; (b) $155,598.20 in total unpaid overtime premium wages; (c) $177,048.20 in total liquidated damages (a+b); and (d) $43,700.36 in pre-judgment interest, plus $13.56, $9.83, and $20.27 per day for Plaintiffs Holguin, Coello, and Laskawski respectively (for a total of $43.66) for every day after November 8, 2024 until the day the Clerk of Court enters a final judgment;

2. Reasonable attorneys' fees and costs in the amount of $9,439.55; and

3. Post-judgment interest of pursuant to 28 U.S.C. § 1961.

## BACKGROUND

### I.     Factual Background

Unless otherwise indicated, I draw the facts from the Proposed Findings (ECF 70), the Complaint (ECF 1), and the declarations submitted by Plaintiffs (ECF 51, Astrid Coello Affidavit ("Coello Aff."); ECF 52, Camilo Holguin Affidavit ("Holguin Aff."); ECF 53, Tomaz Laskawski Affidavit ("Laskawski Aff.")). *See Lopez v. Emerald Staffing, Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.

2009) as authority for relying on and accepting as true facts from the plaintiffs' proposed

findings of fact and conclusions of law, the plaintiffs' declarations, and the plaintiffs' complaint).

    A.    <u>Holguin</u>

    Plaintiff Holguin was employed as a sales representative and general worker at Bargain

House by Quality Furniture, located at two locations: (i) 381 N. Central Ave., White Plains, NY

10606 ("Bargain House – Westchester"); and (ii) 110 Rockland Plaza, Space 13A, Clarkstown, NY

10954 ("Bargain House – Rockland Plaza"). (*See* ECF 1, Compl. ¶ 7; ECF 52, Holguin Aff. ¶¶ 3-4.)

Plaintiff Holguin worked for Defendants between June 2021 and June 2022; he worked five or

six days a week at Bargain House – Westchester between June 2021 and November 2021, and

seven days a week at Bargain House – Rockland Plaza between December 2021 and June 2022.

(*See* ECF 1, Compl. ¶¶ 41-42.) At Bargain House – Westchester, Plaintiff Holguin worked from

approximately 10:00 a.m. to 8:00 p.m. on the days he worked, or approximately 50 to 60 hours

per week. (*See id.* ¶ 41.) At Bargain House – Rockland Plaza, Plaintiff Holguin worked from

Monday through Saturday from approximately 10:00 a.m. to 9:00 p.m. or 10:00 p.m. and on

Sundays from 11:00 a.m. to 7:00 p.m. or 8:00 p.m., or approximately 74 to 81 hours during the

week. (*See id.* ¶ 42.)

    From approximately June 2021 to November 2021, Plaintiff Holguin was paid a flat

salary of $50 per day by Defendants, plus a commission of 5% on each of his sales. (See *id.* ¶

43.) From approximately December 2021 to February 2022, Plaintiff Holguin was paid a flat

salary of $100 per day with no commission, and from March 2022 to June 2022, he was paid a

flat salary of $150 per day plus a commission of 5% on each of his sales, except that Defendants

failed to pay Plaintiff Holguin any commission for the last three months of his employment, from April 2022 to June 2022. (*See id.* ¶¶ 45-47.)

B.    Coello

Plaintiff Coello was also employed as a sales representative and general worker at Bargain House by Quality Furniture, where she worked at Bargain House – Westchester and Bargain House – Rockland Plaza. (*See* ECF 51, Coello Aff. ¶ 4.) Plaintiff Coello worked for the Defendants between January 2022 and June 2022, where she worked seven days a week at Bargain House – Rockland Plaza between January 2022 and May 2022, and seven days a week at Bargain House – Westchester during June 2022. (*See id.* ¶¶ 5-6.) At Bargain House – Rockland Plaza, Plaintiff Coello worked from approximately 10:00 a.m. to 9:00 p.m. or 10:00 p.m. from Monday to Saturday and from 11:00 a.m. to 7:00 p.m. or 8:00 p.m. on Sundays, or approximately 74 to 81 hours per week. (*See id.* ¶ 5.) At Bargain House – Westchester, Plaintiff Coello worked approximately the same hours on the same days of the week, or approximately 74 to 81 hours per week. (*See id.* ¶ 6.) For the entire period of her employment, Plaintiff Coello was paid a flat salary of $150 per day, plus a 5% commission on each of her sales, except that Defendants failed to pay Plaintiff Coello any commissions for the last three months of her employment, from April 2022 to June 2022. (*See id.* ¶¶ 7-8.)

C.    Laskawski

Plaintiff Laskawski was employed as a sales representative and general worker at Bargain House – Westchester and Bargain House – Rockland Plaza from October 2020 to December 2021. (*See* ECF 53, Laskawski Aff. ¶ 4.) From October 2020 to March 2021, Plaintiff Laskawski worked seven days a week at Bargain House – Westchester from 9:00 a.m. to 9:00

p.m., or approximately 84 hours per week. (*See id.* ¶ 5.) From approximately April 2021 to October 2021, Plaintiff Laskawski worked seven days a week at Bargain House – Westchester from 10:00 a.m. to 8:00 p.m., or approximately 70 hours per week. (*See id.* ¶ 6.) From November 2021 to December 2021, Plaintiff Laskawski worked seven days a week at both Bargain House – Westchester and Bargain House – Rockland Plaza from 10:00 a.m. to 8:00 p.m., or approximately 70 hours per week. (*See id.* ¶ 7.)

From October 2020 to March 2021, Plaintiff Laskawski was not paid any wages by the Defendants. (*See id.* ¶ 8.) From April 2021 to December 2021, Defendants paid Plaintiff a flat salary of $1,000 per week. (*See id.* ¶ 9.) During the entire period of employment, the Defendants promised to pay Plaintiff Laskawski a commission of 3% on each of his sales, but they failed to pay Plaintiff Laskawski any commissions. (*See id.* ¶¶ 10-11.)

## II.    Procedural History

On January 1, 2023, Plaintiffs filed the Complaint in this action, alleging FLSA and NYLL violations involving unpaid overtime and minimum wages. (*See* ECF 1, Compl. ¶ 2.) Plaintiffs filed affidavits of service indicating that, on January 5, 2023, Defendants were served with the Summons and Complaint. (*See* ECF 10, Aff. of Service.) The Answer was due on January 31, 2023. (*See* ECF 11, Aff. of Service.) Defendants failed to timely answer or otherwise respond to the Complaint.

On October 31, 2023, pursuant to Fed. R. Civ. P. 55(b)(2) and Rule 55.2(b) of the Local Rules of this Court, Plaintiffs began seeking a default judgment against Defendants. (*See* ECF 48, Mot. for Default J.) The Clerk of Court issued a certificate of default on the next day. (*See* ECF 59, Certificate of Default.) On November 15, 2023, Your Honor issued a scheduling order setting

a briefing schedule for Plaintiffs' application for a default judgment. (*See* ECF 60, Order.)

Plaintiffs served that order on Defendants (*see* ECF 62, ECF 63, ECF 64, ECF 65, ECF 66 (Affs. of

Service)), but Defendants made no filings to oppose a judgment of default. On January 30,

2024, Your Honor issued an order stating that Defendants were in default and referring this

matter to a magistrate judge for an inquest on damages. (*See* ECF 67, Order of Default J.; ECF

68, Order Referring Case to Magistrate Judge.)

On February 9, 2024, I issued a scheduling order for a damages inquest and ordered that

Plaintiffs respond with their Proposed Findings by February 23, 2024. (*See* ECF 69, Scheduling

Order for Damages Inquest.) I also ordered Defendants to serve upon Plaintiff's counsel their

responses by March 8, 2024. (*See id.*) On February 22, 2024, Plaintiffs submitted their Proposed

Findings. (*See* ECF 70, Proposed Findings.) On October 25, 2024, I issued an order directing

Plaintiffs to file proof of service on Defendants by October 28, 2024 of my inquest scheduling

order, the Proposed Findings, and the order requiring proof of service; that order gave

Defendants an extension of time nunc pro tunc until November 4, 2024 to oppose the default

judgment application. (*See* ECF 73, Order.) Plaintiffs filed proof of service as ordered. (*See* ECF

74, Aff. of Service.) Defendants failed to file any response to Plaintiffs' default judgment

application by the deadline.

## LEGAL STANDARDS

I.    **Obtaining a Default Judgment**

A party seeking default judgment must follow the steps listed in Rule 55 of the Federal

Rules of Civil Procedure. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry &*

*Constr., LLC,* 779 F.3d 182, 186-87 (2d Cir. 2015); Fed. R. Civ. P. 55. Under FRCP 55(a), when a

"party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, under

FRCP 55(b), should the party still fail to appear or move to set aside the default, the Court may

enter a default judgment. *See* Fed. R. Civ. P. 55(b).

In considering whether to enter default judgments, courts are guided by the factors of:

"(1) whether the default was willful; (2) whether ignoring the default would prejudice the

opposing party; and (3) whether the defaulting party has presented a meritorious defense." *J&J*

*Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774,

at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)).

Courts must be cautious in awarding default judgment because it is an extreme remedy that

should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

## II.    Determining Liability

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd.*

*v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then

determine if the allegations accepted as true establish liability for the defendants as a matter of

law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). On a

motion for default judgment, "the burden is on the plaintiff to establish an entitlement to

recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J*

*Sports*, 2014 WL 4467774, at *5 (internal quotation marks and citation omitted). If the Court

finds that the well-pleaded allegations state a claim, the Court then analyzes "whether plaintiff

has provided adequate support for [the requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678

F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to

state a claim on which relief may be granted, the Court may not award damages, "even if the

post-default inquest submissions supply the missing information." *Perez v. 50 Food Corp.,* No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at \*4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### III.    Determining Damages

Once liability is established, the Court conducts an inquiry on the amount of damages. *See Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at \*3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). The plaintiff bears the burden of providing evidence to prove the extent of damages. *See Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at \*2 (S.D.N.Y. Mar. 1, 2012).

A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." *Id.* (internal quotation marks omitted) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)). The evidence the plaintiff submits must be admissible. *Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at \*2 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105,

111 (2d Cir. 1997) (explaining that a court may calculate damages based on declarations and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment" (internal quotation marks and citation omitted)).

In situations where the employer does not bring forward accurate or complete payroll records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687 (1946)). A court can credit a plaintiff's "recollections regarding their hours and pay in conducting its inquest. Nevertheless, the court must ensure that the plaintiffs' approximations and estimates are reasonable and appropriate." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018) (internal quotation marks and citation omitted). The default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## DISCUSSION

**I.      Default Judgment**

In accordance with the two-step process set forth in Rule 55, the Clerk of the Court issued the Certificate of Default, and Your Honor entered the Default Judgment Order. (*See* ECF 59, Certificate of Default; ECF 67, Order of Default J.) On the question whether the default was willful, the Court may infer from Defendants' failure to submit any reply to the Proposed Findings, after having been served, that the default was willful. *See Indymac Bank, F.S.B. v. Nat'l*

*Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that a defendant's non-appearance in an action in addition to failing to respond to a complaint and subsequent motion for default judgment "indicate willful conduct"). On the issue of prejudice, delaying entry of a default judgment might prejudice Plaintiffs. *See Inga v. Nesama Food Corp.*, No. 20-CV-0909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that an FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). As to a potentially meritorious defense, Defendants have presented no defense at all. Thus, the requirements of Rule 55 are satisfied, and the relevant factors weigh in Plaintiff's favor. I conclude that entry of a default judgment is proper in this case.

## II.    Liability

### A.    Jurisdiction and Venue

The Court has subject matter jurisdiction by virtue of the federal FLSA claims. *See* 28 U.S.C. § 1331 (federal question jurisdiction). The Court has supplemental jurisdiction over the NYLL claims, which share the same common nucleus of operative facts as the FLSA claims. *See* 28 U.S.C. § 1367 (supplemental jurisdiction).

The Court also has personal jurisdiction over Defendants, which is "a necessary prerequisite to entry of a default judgment." *See Reilly v. Plot Com.*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016). Courts must assess "whether the defendant is subject to jurisdiction under the law of the forum state – here, New York" – and

then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Id.* New York law authorizes personal jurisdiction over domestic corporations, N.Y. C.P.L.R. § 301, and over non-domiciliary defendants who transact business within the state, N.Y. C.P.L.R. § 302(a)(1). The Due Process Clause is satisfied if the court has general or specific personal jurisdiction over the defendant. *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 115 (E.D.N.Y. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)). A court has general personal jurisdiction over an individual defendant sued in his or her place of domicile and over a corporate defendant sued in its state of incorporation or principal place of business. *See id*. A court has specific personal jurisdiction over a defendant who purposefully avails itself of the privilege of doing business in the forum state where the plaintiff's claim arises out of the defendant's contacts with the forum. *See id.*

The Court has general personal jurisdiction over the Corporate Defendants under C.P.L.R. § 301, as they are all incorporated in New York State, have their principal places of business in this District, and were properly served by Plaintiffs. (*See* ECF 1, Compl. ¶¶ 13, 17, 21; ECF 11, Quality Furniture NY Inc. Aff. of Service; ECF 17, Bargain House by Quality Furniture NY Inc. Aff. of Service; ECF 21, Bargain House by Quality Furniture Inc. Aff. of Service.)

Plaintiffs have not established Defendant Nasrallah's domicile, but he is subject to specific personal jurisdiction in this District under C.P.L.R. § 302, because he is "an owner, officer, and/or agent" of the Corporate Defendants who possessed operational control over the Corporate Defendants, or controlled significant functions of them (*see* ECF 1, Compl. ¶¶ 25-29). Under section 302(a)(1), "if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has "played a part in the [corporate]

activities that gave rise to the action" is likewise subject to jurisdiction, to the extent that due process permits, due to the agency relationship between the corporation and the officer." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019). A court may assert personal jurisdiction over an individual corporate officer under section 302(a)(1) based on the in-state activities of the corporate defendant when the individual officer "play[ed] a part in the activities that g[a]ve rise to the action." *Id*; *see also Palmer v. eCapital Corp.*, No. 23-CV-4080 (DEH), 2024 WL 3794715, at *5 (S.D.N.Y. Aug. 13, 2024) (denying a motion to dismiss for lack of personal jurisdiction by the non-domiciliary individual defendant officers of the corporate defendant due to their purposeful business activities in New York, which activities had an "articulable nexus" to the claims in the case); *Suriel v. Cruz,* No. 20-CV-8442 (VSB) (SLC), 2022 WL 1750232, at *8 (S.D.N.Y. Jan. 10, 2022) (finding that the individual defendants, who owned and operated the corporate defendant, were subject to the Court's personal jurisdiction), *report and recommendation adopted*, 2022 WL 1751163 (S.D.N.Y. May 31, 2022); *Inga v. Nesama Food Corp.*, No. 20-CV-0909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (same), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). Plaintiffs allege that Nasrallah "determined the wages and compensation of employees, including Plaintiffs [and] established the schedules of employees," among other responsibilities," and that he had "operational control over," "possesse[d] an ownership interest in," and "control[led] significant functions of the Corporate Defendants." (ECF 1, Compl. ¶¶ 28, 31.) Nasrallah was also properly served by Plaintiffs with the summons and the Complaint. (*See* ECF 32, Nasrallah Aff. of Service.)

Under the general venue provision, a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district

is located; (2) a judicial district in which a substantial part of the events or omissions giving rise

to the claim occurred; or (3) if there is no district in which an action may otherwise be brought

as provided in this section, any judicial district in which any defendant is subject to the court's

personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391(b). Pursuant to section

1391(c), an individual defendant is deemed to reside in the judicial district in which that person

is domiciled, while a corporate defendant resides in any judicial district where it is subject to

personal jurisdiction.

Plaintiffs have not established that venue is proper in this District under section

1391(b)(1) because, while the Corporate Defendants reside in this District, there is no indication

that Nasrallah resides in New York State. (*See* ECF 1, Compl. ¶¶13, 17, 21). However, venue is

proper in this District based on section 1391(b)(2), because a substantial part of the events or

omissions alleged in the Complaint that give rise to Plaintiffs' claims took place in this District.

(*See* ECF 1, Compl. ¶ 6.)

B. <u>Statute of Limitations</u>

Under the NYLL, the statute of limitations is six years, and recovery of damages is

limited to the six-year period prior to any filed action. *See* NYLL § 198(3). To account for the

disruptions due to COVID, Governor Cuomo's Executive Order No. 202.8 and subsequent

executive orders tolled the statute of limitations for 228 days, from March 20, 2020 until

November 3, 2021, for state law claims. Courts in this Circuit interpreted the orders to apply to

federal court cases involving state law statutes of limitations. *See, e.g., Marquez v. Indian Taj,

Inc.*, No. 20-CV-5855 (DG) (RML), 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022) (collecting

cases).

Under the FLSA, the statute of limitations is two years but can be extended to three years if the violation was willful. *See* 29 U.S.C. § 255(a). A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Lopez v. Emerald Staffing, Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *6 (S.D.N.Y. Feb. 26, 2020) (internal quotation marks omitted) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988)). Damages are also tied to the statute of limitations under the FLSA, and so Plaintiffs can only "recover damages for pay periods as far back as the statute of limitations reaches." *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299 (E.D.N.Y. 2018).

Plaintiffs allege that they worked for the Defendants during various periods, the earliest of which began in October 2020. (*See* ECF 51, Coello Aff. ¶ 4; ECF 52, Holguin Aff. ¶ 4; ECF 53, Laskawski Aff. ¶ 4.) Plaintiffs filed the Complaint on January 1, 2023. (*See* ECF 1, Compl.). As a Plaintiff first worked for Defendants starting in October 2020, part of the employment period is outside the limitations periods for the FLSA, but there is no period that is time-barred under the six-year statute of limitations under the NYLL. Accordingly, I respectfully recommend that the Plaintiffs be awarded damages under the NYLL and willfulness need not be ascertained for the FLSA. *See Lopez v. Emerald Staffing, Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *6 (S.D.N.Y. Feb. 26, 2020) (finding that where the plaintiffs would be provided equal or greater relief under the NYLL's 6-year statute of limitations than under either the 2-year non-willful or 3-year willful FLSA statute of limitations, the Court will award damages under the NYLL).

C.    <u>FLSA and NYLL Elements</u>

Both the FLSA and the NYLL require that employers pay their employees a minimum wage. *See* 29 U.S.C. § 206(a); NYLL § 652(1). To state a claim for wages under the FLSA, a plaintiff must allege that: "(1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages." *Burns v. Scott*, 635 F. Supp. 3d 258, 274 (S.D.N.Y. Oct. 17, 2022) (internal quotation marks and citation omitted). The NYLL requires a similar showing except that it does not require plaintiffs to "show a nexus with interstate commerce or a minimum amount of sales." *Id.* (internal quotation marks and citation omitted). To recover overtime compensation under the FLSA, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

1.    Employment Relationship

In interpreting the FLSA, courts afford the term employer "an expansive definition with 'striking breadth.'" *Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019). "[C]ourts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017)) (citation omitted).

I accept as true all well-supported facts in the Proposed Findings (ECF 70). *See Burns*, 635 F. Supp. 3d at 269 (holding that the court should accept as true all well-pleaded factual

allegations given a Defendant's default.) Thus, I accept as true that Plaintiffs were employed by Defendants as "sales representatives" and "general workers." (ECF 70, Proposed Findings at 1-3, 5.)

2.  Interstate Commerce

For a FLSA claim, Plaintiffs must establish that there was engagement in interstate commerce either through their "personal engagement in interstate commerce or enterprise coverage through the employer's engagement in interstate commerce." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354-54 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011)). In the Proposed Findings, there is no mention of interstate activity, but the Complaint alleges that the Defendants had "an annual gross volume of sales of not less than $500,000.00" and that at all relevant times, the Defendants had "employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." (ECF 1, Compl. ¶ 14.) These allegations are deemed admitted due to Defendants' default and are sufficient to support Plaintiffs' claims under the FLSA. *See Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce requirement), *report and recommendation adopted*, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019). If Your Honor accepts my recommendation that Plaintiffs be allowed their recovery under the NYLL rather than the FLSA, there is no need for them to demonstrate a

16

nexus with interstate commerce. *See Burns*, 635 F. Supp. 3d at 274 (internal quotation marks omitted) (stating that "NYLL does not require plaintiffs to show a nexus with interstate commerce").

      3.   Plaintiffs' Regular Rate of Pay

The FLSA defines an employee's "regular rate" of pay for those who are paid a weekly salary "by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). Courts have recognized that under the FLSA, there is "a rebuttable presumption that a weekly salary covers 40 hours," unless there is an "employer-employee agreement that the salary cover a different number of hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). Courts in this District have extended this rebuttable presumption to also apply under the NYLL. *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Amaya v. Superior Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). As Defendants are in default, they are unable to rebut the presumption that Plaintiffs' weekly salaries covered only the first 40 hours of work.

Although Plaintiffs have made allegations sufficient to hold Defendants liable under both the FLSA and NYLL, they are "not entitled to recover under both FLSA and NYLL for overtime earned during the same period." *Lopez v. Royal Thai Plus, LLC*, 2018 WL 1770660, at *5 8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018) The Court may, however, exercise its discretion to award "damages under the statute providing the greatest amount of relief." *Id.* Thus, I recommend that damages be

provided under the NYLL, and that any calculations to determine Plaintiffs' regular rates of pay use 40 hours as the number of hours which the salary was intended to compensate.

### 4. Overtime Compensation

Both the FLSA and the NYLL require that an employer pay for overtime hours worked beyond 40 hours per week at a rate of one and one-half times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. Plaintiffs, at various times during their employment, were not paid this higher rate but were instead paid either a fixed daily wage or weekly wage equating to $10.00 per hour worked, including those hours worked beyond 40 hours. (*See* ECF 70, Proposed Findings at 2-5, 8.) Thus, Plaintiffs have stated claims for unpaid overtime wages.

### 5. Statutory Wage Notices and Statements

Under the NYLL, an employer is required to provide a notice containing the "rate or rates of pay and basis thereof"; "allowances, if any, claimed as part of the minimum wage"; and "the regular pay day designated by the employer." N.Y. Lab. L. § 195(1)(a). Failure to do so within ten business days of the first day of employment creates a penalty of $50.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 100 days. *See* N.Y. Lab. L. § 198(1-b). The NYLL also requires a wage statement to be provided to an employee with each payment of wages. *See* N.Y. Lab. L. § 195(3). Failure to do so creates a penalty of $250.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 20 days. *See* N.Y. Lab. L. § 198(1-d).

A court may deny these statutory damages if a plaintiff does not have standing under Article III of the U.S. Constitution. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 304 (2d

Cir. 2024). To recover under the concrete injury requirement for Article III standing, a plaintiff must suffer a concrete harm that results from a "causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. Further, to establish a causal connection to a concrete injury, the plaintiff must show that if accurate notices had been provided, that plaintiff would have undertaken "advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* Therefore, Plaintiffs must allege a downstream concrete injury that was caused by the employer's failure to provide notice or wage statements; as part of this showing, Plaintiffs must establish that they would have undertaken advocacy and plausibly received an actual benefit or avoided some actual harm as a result.

Plaintiffs allege that, due to Defendants' breach of obligations to provide them with payroll notice and wage statements, they were injured by being denied "the right to know the conditions of their compensation," which "resulted in the underpayment of wages." (ECF 1, Compl. ¶ 64.) Thus, they allege an injury that stemmed from the Defendants' failure to provide notice or wage statements. However, Plaintiffs do not plausibly allege that their injury, the underpayment in wages, was caused by being denied the right to know the conditions of their compensation. *See Guthrie*, 113 F.4th at 309 ("A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot 'assume this conclusion without analysis' or rely on 'speculation and conjecture.'"). As no analysis was provided by Plaintiffs alleging a causal connection between being denied the right to know the conditions of their compensation and the underpayment in wages, and because Plaintiffs have not alleged they would have undertaken

"advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided," Plaintiffs have failed to establish Article III standing necessary for their wage notice and statement claims. *Id.* at 308.

### III. Damages

#### A. Evidentiary Basis

The Court must determine whether Plaintiffs have provided sufficient evidence to support their claimed damages. *See Transatlantic Marine*, 109 F.3d at 111; *Bleecker v. Zetian Sys.*, Inc., No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). Each of the three Plaintiffs filed affidavits attesting to the dates and circumstances of their employment. (*See* ECF 51, Coello Aff.; ECF 52, Holguin Aff.; ECF 53, Laskawski Aff.) Defendants have not responded to the Court's orders or the Proposed Findings, nor have they provided any contrary evidence. I therefore conclude that Plaintiffs have met their evidentiary burden of proving damages and that an in-person hearing is unnecessary because their submissions, combined with Defendants' admissions resulting from their default, provide a sufficient basis for evaluating the fairness of their damages request. *See Fustok*, 873 F.2d at 40; *Boston Sci. Corp. v. N.Y. Ctr. for Specialty Surgery*, No. 14-CV-6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015).

#### B. Wages

##### 1. Holguin

The applicable period is from June 1, 2021 to June 30, 2022. (*See* ECF 1, Compl. ¶ 8.) Between June 1, 2021 and November 30, 2021, Holguin was paid a flat salary of $50 per day and worked an average of 55 hours per week, with 15 hours of overtime each week. (*See id.* ¶¶

41, 43.) Between December 1, 2021 and February 28, 2022, Holguin was paid a flat salary of

$100 per day, and worked an average of 77.5 hours per week, with 37.5 hours of overtime

hours. (*See id.* ¶¶ 42, 44) Between March 1, 2022 and June 30, 2022, he was paid a flat salary of

$150 per day and worked an average of 77.5 hours per week. (*See id.* ¶¶ 42, 45.) Although

Holguin alleges in the Complaint that he received commissions on sales in addition to his salary,

he does not provide an estimate as to how much he earned in commissions each week. (*See id*.

¶¶ 43-46.) Thus, I respectfully recommend that the Court not consider Holguin's commissions

for purposes of assessing unpaid minimum wage liability. *See Cao v. Wedding in Paris LLC*, No.

20-CV-2336 (RPK) (JAM), 2024 WL 1518847, at *19-20 (E.D.N.Y. Mar. 29, 2024) (recommending

that the Court should not consider an employee's commissions for purposes of assessing

minimum wage liability when the employee had not stated how much she earned in

commissions each week).

*a. Unpaid Minimum Wages*

From December 31, 2020 to December 30, 2021, the New York State mandated

minimum wage in Westchester County was $14.00 per hour.[1] Between June 1, 2021 and

November 30, 2021, Defendants paid Holguin $50 per day for an average of 5.5 days per week,

which is a total of $275 per week. Divided by the first 40 hours per week, the Defendants paid

Holguin $6.88 per hour. At the applicable minimum wage of $14.00 per hour and working a full

40-hour week, Holguin should have been paid $560 per week for his regular weekly salary. This

results in a weekly minimum wage underpayment of $285.00. In the 26-week period where he

---

[1]        *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

was paid $50 per day, Holguin should have been paid an additional $7,410, calculated at $285 per week, times 26 weeks.

Between December 1, 2021, and December 30, 2021, New York State's mandated minimum wage in Rockland County was $12.50 per hour, and between December 31, 2021 and December 30, 2022 it was $13.20 per hour.[2] Between December 1, 2021 and February 28, 2022, Defendants paid Holguin $100 per day for an average of 7 days a week of work, calculated at $700 per week. Divided by the first 40 hours per week, Defendants paid Holguin $17.50 per hour. As this rate is above the minimum wage for the period, Defendants were not obligated to pay Holguin a higher rate per hour during this period. Similarly, between March 1, 2022 and June 30, 2022, Defendants paid Holguin $150 per day during an average of 7 days of work per week, calculated at $1,050 per week. Dividing by the first 40 hours per week leads to an hourly rate of $26.25. As this rate is above the relevant minimum wage for the period, the Defendants were not obligated to pay Holguin a higher rate per hour during this period. Thus, Defendants do not owe Holguin any amount in minimum wage underpayment during this period.

Over the entire period, Holguin should have been paid an additional $7,410 in earned weekly wages, as summarized in the table below.

---

[2]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(3).

| Calculation of Unpaid Minimum Wages – Holguin | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Period | Number of Weeks | Daily Rate of Pay | Average Number of Days Worked Per Week | Actual Weekly Pay (Daily Rate of Pay x Days Worked Per Week) | Regular Hourly Rate of Pay (Weekly Salary / 40 Hours) | Lawful Regular Weekly Salary (Lawful Hourly Rate of Pay x 40) | Weekly Minimum Wage Underpayment (Difference between the Lawful Regular Weekly Salary and the Actual Weekly Salary) | Total Minimum Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| June 1, 2021 to November 30, 2021 | 26 | $50.00 | 5.5 | $275.00 | $6.88 | $560.00 [3] | $285.00 | $7,410.00 |
| December 1, 2021 to February 28, 2022 | 13 | $100.00 | 7 | $700.00 | $17.50 | $700.00 | $0 | $0 |
| March 1, 2022 to June 30, 2022 | 18 | $150.00 | 7 | $1,050.00 | $26.25 | $1,050.00 | $0 | $0 |
| **Total** | | | | | | | | **$7,410.00** |

*b. Unpaid Overtime Premium Wages*

From June 1, 2021 to November 30, 2021, a period of 26 weeks, the New York State

mandated minimum wage in Westchester County was $14.00 per hour.[4] Defendants did not

pay Holguin any overtime wages. He should have been paid $21.00 per hour for every overtime

hour worked, calculated at one and one-half times the minimum wage of $14.00 per hour.

During this period, Holguin worked an average of 55 hours per week, with 15 hours of

overtime. This results in $315.00 in unpaid overtime wages per week, calculated at $21.00

---

[3]     Holguin's Regular Rate of Pay is calculated at $6.88, which was below minimum wage.
Thus, this is substituted for the lawful rate of $14.00, which was the minimum wage in
Westchester County during the pay period. *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

[4]     *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

times 15 overtime hours. In this 26-week period, Holguin should have been paid an additional $8,190.00, calculated at $315.00 per week times 26 weeks.

From December 1, 2021 to February 28, 2022, a period of 13 weeks, Holguin's regular rate of pay was $17.50 per hour. Defendants did not pay Holguin any overtime. He should have been paid $26.25 per hour for every overtime hour worked, calculated at one and one-half times his regular rate of $17.50 per hour. During this period, Holguin worked an average of 77.5 hours per week, for 37.5 hours of overtime. This results in $984.38 in unpaid overtime wages per week, calculated at $26.25 times 37.5 overtime hours. In this 13-week period, Holguin should have been paid an additional $12,796.88, calculated at $984.38 per week times 13 weeks.

From March 1, 2022 to June 30, 2022, a period of 18 weeks, Holguin's regular rate of pay was $26.25 per hour. Defendants did not pay Holguin any overtime. He should have been paid $39.38 per hour for every overtime hour worked, calculated at one and one-half times his regular rate of $26.25 per hour. During this period, Holguin worked an average of 77.5 hours per week, resulting in 37.5 hours of overtime hours. This results in $1,476.56 in unpaid overtime wages per week, calculated at $39.38 times 37.5 overtime hours. In this 18-week period, Holguin should have been paid an additional $26,578.13, calculated at $1,476.56 per week times 18 weeks.

Over the entire period, Holguin should have been paid an additional $47,565.01 in overtime premium wages, as summarized in the table below.

| Calculation of Unpaid Overtime Wages – Holguin | | | | | | |
|---|---|---|---|---|---|---|
| Period | Number of Weeks | Average Hours Worked Per Week | Overtime Hours (Hours Worked Per Week – 40) | Overtime Rate of Pay (Lawful Hourly Rate of Pay x 1.5) | Weekly Overtime Underpayment (Overtime Rate of Pay x Overtime Hours) | Total Overtime Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| June 1, 2021 to November 30, 2021 | 26 | 55 | 15 | $21.00 | $315.00 | $8,190.00 |
| December 1, 2021 to February 28, 2022 | 13 | 77.5 | 37.5 | $26.25 | $984.38 | $12,796.88 |
| March 1, 2022 to June 30, 2022 | 18 | 77.5 | 37.5 | $39.38 | $1,476.56 | $26,578.13 |
| **Total** | | | | | | **$47,565.01** |

\*\*\*

Although Holguin alleges that Defendants failed to pay him any commissions for the last three months of his employment, he does not request damages for unpaid commissions in his Proposed Findings. (*See* ECF 1, Compl. ¶ 46; ECF 70, Proposed Findings at 14.) Thus, I respectfully recommend that any claims for unpaid commissions are deemed abandoned, and I do not recommend any damages for unpaid commissions. *See Mishtaku v. Presidential Luxury Limousines*, No. 23-CV-1501 (OEM) (CLP), 2024 WL 1259132, at \*9 (E.D.N.Y. Feb. 29, 2024) (finding that when damages are not requested for claims regarding commissions despite being alleged in the complaint, those claims are deemed abandoned and damages are not awarded), *report and recommendation adopted*, 2024 WL 1259391 (E.D.N.Y. Mar. 25, 2024).

Over the entire period, Holguin should have been paid an additional $54,975.01 in minimum wages and overtime premium wages.

2. Coello

The applicable period is from January 1, 2022 to June 30, 2022. (*See* ECF 1, Compl. ¶ 10.) Between January 1, 2022 and May 31, 2022, Coello was paid a flat salary of $150 per day and worked an average of 77.5 hours per week, with 37.5 hours of overtime each week. (*See id.* ¶¶ 50, 52.) Between June 1, 2022 and June 30, 2022, Coello was again paid a flat salary of $150 per day and worked the same hours. (*See id*.) Although Coello alleges in the Complaint that she received commissions in addition to her salary, she does not provide an estimate as to how much she earned in commissions each week. (*See id*.) Thus, I recommend that the Court not consider Coello's commissions for purposes of assessing unpaid minimum wage liability. *See Cao*, 2024 WL 1518847, at *19-20.

### a. *Unpaid Minimum Wages*

From December 31, 2021 to December 30, 2022, the New York State mandated minimum wage in Rockland County was $13.20 per hour.[5] During the same period, in Westchester County, the New York State mandated minimum wage was $15.00 per hour.[6] Between January 1, 2022 and May 31, 2022, Defendants paid Coello $150 per day for an average of 7 days a week of work, calculated at $1,050 per week. Dividing by the first 40 hours per week leads to an hourly rate of $26.25. As this rate is above the minimum wage for the period, the Defendants were not obligated to pay Coello a higher rate per hour during this period. Between June 1, 2022 and June 30, 2022, Defendants paid Coello the same wage for the same number of hours and days per week. This same hourly wage of $26.25 per hour was again

---

[5]        *See* 12 N.Y.C.R.R. § 142-2.1(a)(3).

[6]        *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

higher than the applicable minimum wage rate, and thus Defendants were not obligated to pay

Coello a higher rate per hour during this period. Defendants do not owe Coello any amount in

minimum wage underpayment during her work period.

Over the entire period, Coello should have been paid an additional $0 in earned weekly

wages, as summarized in the table below.

| Calculation of Unpaid Minimum Wages – Coello | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Period | Number of Weeks | Daily Rate of Pay | Average Number of Days Worked Per Week | Actual Weekly Pay (Daily Rate of Pay x Days Worked Per Week) | Regular Hourly Rate of Pay (Weekly Salary / 40 Hours) | Lawful Regular Weekly Salary (Lawful Hourly Rate of Pay x 40) | Weekly Minimum Wage Underpayment (Difference Between the Lawful Regular Weekly Salary and the Actual Weekly Salary) | Total Minimum Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| January 1, 2022 to May 31, 2022 | 22 | $150.00 | 7 | $1,050.00 | $26.25 | $1,050.00 | $0.00 | $0.00 |
| June 1, 2022 to June 30, 2022 | 5 | $150.00 | 7 | $1,050.00 | $26.25 | $1,050.00 | $0.00 | $0.00 |
| **Total** | | | | | | | | **$0.00** |

b. *Unpaid Overtime Premium Wages*

From January 1, 2022 to May 31, 2022, a period of 22 weeks, Coello's regular rate of pay

was $26.25 per hour. Defendants did not pay Coello any overtime. She should have been paid

$39.38 per hour for every overtime hour worked, calculated at one and one-half times the

regular rate of $26.25 per hour. During this period, Coello worked an average of 77.5 hours per

week, resulting in 37.5 hours of overtime hours. This results in $1,476.56 in unpaid overtime

wages per week, calculated at $39.38 times 37.5 overtime hours. In this 22-week period, Coello

should have been paid an additional $32,484.38, calculated at $1,476.56 per week times 22

weeks.

From June 1, 2022 to June 30, 2022, a period of 5 weeks, Coello received the same

regular rate of pay and worked the same hours on the same days. Defendants did not pay

Coello any overtime. She should have been paid the same weekly underpayment over the 5-

week period: an additional $7,382.81, calculated at $1,476.56 per week times 5 weeks.

Over the entire period, Coello should have been paid an additional $39,867.19 in

overtime premium wages, as summarized in the table below.

| Calculation of Unpaid Overtime Wages – Coello | | | | | | |
|---|---|---|---|---|---|---|
| Period | Number of Weeks | Average Hours Worked Per Week | Overtime Hours (Hours Worked Per Week – 40) | Overtime Rate of Pay (Lawful Hourly Rate of Pay x 1.5) | Weekly Overtime Underpayment (Overtime Rate of Pay x Overtime Hours) | Total Overtime Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| January 1, 2022 to May 31, 2022 | 22 | 77.5 | 37.5 | $39.38 | $1,476.56 | $32,484.38 |
| June 1, 2022 to June 30, 2022 | 5 | 77.5 | 37.5 | $39.38 | $1,476.56 | $7,382.81 |
| **Total** | | | | | | **$39,867.19** |

\*\*\*

Although Coello alleges that Defendants failed to pay her any commissions for the last

three months of her employment, she does not request damages for unpaid commissions in her

Proposed Findings. (*See* ECF 1, Compl. ¶ 53; ECF 70, Proposed Findings at 14.) Thus, I

respectfully recommend that any claims for unpaid commissions are deemed abandoned, and I

do not recommend any damages for unpaid commissions. *See Mishtaku*, 2024 WL 1259132, at

\*9.

Over the entire period, Coello should have been paid an additional $39,867.19 in minimum wages and overtime premium wages.

### 3. Laskawski

The applicable period is from October 1, 2020 to December 31, 2021. (*See* ECF 53, Laskawski Aff. ¶ 4.) Between October 1, 2020 and March 31, 2021, Laskawski was paid no wages at all and worked an average of 84 hours per week, with 44 hours of overtime each week. (*See id.* ¶¶ 5, 8.) Between April 1, 2021 and December 31, 2021, Laskawski was paid a flat salary of $1,000 per week and worked an average of 70 hours per week. (*See id.* ¶¶ 6-7, 9.)

#### a. Unpaid Minimum Wages

From December 31, 2019 to December 30, 2020, the New York State mandated minimum wage in Westchester County was $13.00 per hour.[7] Between October 1, 2020 and December 30, 2020, a period of 13 weeks, the Defendants paid Laskawski no wages during his 7 days a week of work, amounting to an hourly wage of $0 per hour. At the applicable minimum wage of $13.00, Laskawski should have been paid $520 per week for his regular weekly salary. This results in a weekly minimum wage underpayment of $520.00. In the 13-week period when he was paid no wages, Laskawski should have been paid $6,760, calculated at $520 per week, times 13 weeks.

Between December 31, 2020, and December 30, 2021, the New York State mandated minimum wage in Westchester County was $14.00 per hour.[8] During this period, between December 31, 2020 and March 31, 2021, a period of 13 weeks, the Defendants again paid

---

[7]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

[8]    12 N.Y.C.R.R. § 142-2.1(a)(2).

Laskawski no wages during an average of 7 days a week of work, amounting to an hourly wage of $0 per hour. At the applicable minimum wage of $14.00, Laskawski should have been paid $560 per week for his regular weekly salary. This results in a weekly minimum wage underpayment of $560.00. In the 13-week period when he was paid no wages, Laskawski should have been paid $7,280, calculated at $560 per week, times 13 weeks.

For the remainder of Laskawski's employment, between April 1, 2021 and December 31, 2020, Laskawski was paid a wage of $1,000 per week. Dividing by 40 hours per week leads to an hourly rate of $25. This rate is higher than both the Rockland County and Westchester County minimum wage rates for the period, and thus during this period Defendants were not obliged to pay Laskawski any additional minimum wages.

Over the entire period, Laskawski should have been paid an additional $14,040 in earned weekly wages, as summarized in the table below.

| Calculation of Unpaid Minimum Wages – Laskawski | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Period | Number of Weeks | Daily Rate of Pay | Average Number of Days Worked Per Week | Actual Weekly Pay (Daily Rate of Pay x Days Worked Per Week) | Regular Hourly Rate of Pay (Weekly Salary / 40 Hours) | Lawful Regular Weekly Salary (Lawful Hourly Rate of Pay x 40) | Weekly Minimum Wage Underpayment (Difference Between the Lawful Regular Weekly Salary and the Actual Weekly Salary) | Total Minimum Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| October 1, 2020 to December 30, 2020 | 13 | N/A | 7 | $0.00 | $0.00 | $520.00[9] | $520.00 | $6,760.00 |
| December 31, 2020 to March 31, 2021 | 13 | N/A | 7 | $0.00 | $0.00 | $560.00[10] | $560.00 | $7,280.00 |
| April 1, 2021 to October 31, 2021 | 31 | N/A | 7 | $1,000.00 | $25.00 | $1,000.00 | $0.00 | $0.00 |
| November 1, 2021 to December 31, 2021 | 9 | N/A | 7 | $1,000.00 | $25.00 | $1,000.00 | $0.00 | $0.00 |
| **Total** | | | | | | | | **$14,040.00** |

      *b.  Unpaid Overtime Premium Wages*

From October 1, 2020 to December 30, 2020, a period of 13 weeks, the New York State

mandated minimum wage in Westchester County was $13.00 per hour.[11] Defendants did not

---

[9]     As Laskawski was not paid at all during this pay period, the lawful rate used in this calculation is $13.00 per hour, the minimum wage in Westchester County during the pay period. *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

[10]     As Laskawski was not paid at all during this pay period, the lawful rate used in this calculation is $14.00 per hour, the minimum wage in Westchester County during the pay period. *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

[11]     *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

pay Laskawski any overtime. He should have been paid $19.50 per hour for every overtime hour worked, calculated at one and one-half times the minimum wage of $13.00 per hour. During this period, Laskawski worked an average of 84 hours per week, for 44 hours of overtime. This results in $858.00 in unpaid overtime wages per week, calculated at $19.50 times 44 overtime hours. In this 13-week period, Laskawski should have been paid an additional $11,154.00, calculated at $858.00 per week times 13 weeks.

From December 31, 2020 to March 31, 2021, a period of 13 weeks, the New York State mandated minimum wage in Westchester County was $14.00 per hour.[12] Defendants did not pay Laskawski any overtime. He should have been paid $21.00 per hour for every overtime hour worked, calculated at one and one-half times the minimum wage of $14.00 per hour. During this period, Laskawski worked an average of 84 hours per week, for 44 hours of overtime. This results in $924.00 in unpaid overtime wages per week, calculated at $21.00 times 44 overtime hours. In this 13-week period, Laskawski should have been paid an additional $12,012, calculated at $924 per week times 13 weeks.

From April 1, 2021 to October 31, 2021, a period of 31 weeks, Laskawski's regular rate of pay was $25.00 per hour. Defendants did not pay Laskawski any overtime. He should have been paid $37.50 per hour for every overtime hour worked, calculated at one and one-half times his regular rate of $25.00 per hour. During this period, Laskawski worked an average of 70 hours per week, for 30 hours of overtime. This results in $1,125.00 in unpaid overtime wages per week, calculated at $37.50 times 30 overtime hours. In this 31-week period, Laskawski should have been paid an additional $34,875.00, calculated at $1,125.00 per week times 31 weeks.

---

[12]    *See* 12 N.Y.C.R.R. § 142-2.1(a)(2).

From November 1, 2021 to December 31, 2021, a period of 9 weeks, Laskawski's regular rate of pay was $25.00 per hour. Defendants did not pay Laskawski any overtime. He should have been paid $37.50 per hour for every overtime hour worked, calculated at one and one-half times his regular rate of $25.00 per hour. During this period, Laskawski worked an average of 70 hours per week, for 30 hours of overtime. This results in $1,125.00 in unpaid overtime wages per week, calculated at $37.50 times 30 overtime hours. In this 9-week period, Laskawski should have been paid an additional $10,125.00, calculated at $1,125.00 per week times 9 weeks.

Over the entire period, Laskawski should have been paid an additional $68,166.00 in overtime premium wages, as summarized in the table below.

| Calculation of Unpaid Overtime Wages – Laskawski | | | | | | |
|---|---|---|---|---|---|---|
| Period | Number of Weeks | Average Hours Worked Per Week | Overtime Hours (Hours Worked Per Week – 40) | Overtime Rate of Pay (Lawful Hourly Rate of Pay x 1.5) | Weekly Overtime Underpayment (Overtime Rate of Pay x Overtime Hours) | Total Overtime Wage Underpayment (Number of Weeks x Weekly Underpayment) |
| October 1, 2020 to December 30, 2020 | 13 | 84 | 44 | $19.50 | $858.00 | $11,154.00 |
| December 31, 2020 to March 31, 2021 | 13 | 84 | 44 | $21.00 | $924.00 | $12,012.00 |
| April 1, 2021 to October 31, 2021 | 31 | 70 | 30 | $37.50 | $1,125.00 | $34,875.00 |
| November 1, 2021 to December 31, 2021 | 9 | 70 | 30 | $37.50 | $1,125.00 | $10,125.00 |
| **Total** | | | | | | **$68,166.00** |

*** 

Although Laskawski alleges that Defendants failed to pay him any promised commissions during the period of his employment, he does not request damages for unpaid

commissions in his Proposed Findings. (*See* ECF 53, Laskawski Aff. ¶¶ 10-11; ECF 70, Proposed Findings at 14.) Thus, I respectfully recommend that any claims for unpaid commissions be deemed abandoned, and I do not recommend any damages for unpaid commissions. *See Mishtaku*, 2024 WL 1259132, at *9.

Over the entire period, Laskawski should have been paid an additional $82,206.00 in minimum wages and overtime premium wages.

### C.    Liquidated Damages

Under both the FLSA and the NYLL, a plaintiff who has demonstrated that he was improperly denied wages may recover the reimbursement of these unpaid wages as well as an additional equal amount of liquidated damages. *See Burns*, 635 F. Supp. 3d at 280. A court has discretion to deny liquidated damages if the employer can show that its failure to provide the correct amount in wages was in "good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. The same applies for the NYLL. *See* NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). A plaintiff should recover liquidated damages only under one statute – the one that provides greatest relief. *See Burns*, 635 F. Supp. 3d at 281. The NYLL allows for recovery of both pre-judgment interest and liquidated damages, *see Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), while the FLSA does not, *see Mondragon v. Keff*, 2019 WL 2551536, at *11. Thus, I respectfully recommend that Plaintiffs should be permitted to recover liquidated damages under the NYLL rather than the FLSA.

Having defaulted, Defendants have failed to show that their failure to provide the correct amount in wages was in good faith and that there were reasonable grounds for believing their acts were not in violation of the FLSA or the NYLL. *See id*. Thus, Plaintiffs are entitled to liquidated damages in an equal amount to their unpaid weekly and overtime wages. *See Burns*, 635 F. Supp. 3d at 281. I respectfully recommend that Holguin be awarded be awarded $54,975.01 in total liquidated damages, which is equal to the amount of his compensatory damages under the NYLL, that Coello be awarded $36,914.06 in total liquidated damages, which is equal to the amount of her compensatory damages under the NYLL, and that Laskawski be awarded $82,206.00 in total liquidated damages, which is equal to the amount of his compensatory damages under the NYLL.

      D.    <u>Statutory Damages</u>

As Plaintiffs lack the necessary Article III standing to recover statutory damages under the NYLL, I respectfully recommend that they not be awarded damages for Defendants' failure to provide sufficient wage statements and wage notices.

      E.    <u>Pre-Judgment Interest</u>

Plaintiffs seek pre-judgment interest on amounts due for compensatory damages under the NYLL. The Second Circuit has held that, "even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate," because state liquidated damages are punitive in nature. *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (Sept. 8, 2016) (internal quotation marks and citation omitted). By contrast, the Plaintiffs could not recover pre-judgment interest in addition to liquidated damages under the FLSA, which presumes that liquidated damages include pre-

judgment interest. Therefore, I respectfully recommend that the Plaintiffs be awarded pre-judgment interest on their NYLL minimum wage and overtime claims. However, a plaintiff is not able to recover pre-judgment interest on NYLL liquidated damages or NYLL statutory damages for violations of the wage statement and notice provisions. S*ee Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238 (KPF), 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021).

New York state law sets interest at the rate of nine percent per year. *See* N.Y. C.P.L.R. § 5004. When damages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). "Simple prejudgment interest is calculated from a singular, midpoint date . . . by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment is entered." *Xochimitl*, 2016 WL 4704917, at *18 (internal quotation marks and citation omitted). Courts can determine the appropriate midpoint date by looking for the median date between the earliest ascertainable date the cause of action existed and the date the action was filed. *See Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-0461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Sep. 8, 2016).

The earliest ascertainable date the cause of action existed for Plaintiff Holguin is June 1, 2021, while the date the action was filed was January 1, 2023. (*See* ECF 1, Compl.) Thus, the midpoint date would be approximately March 17, 2022. I respectfully recommend that Plaintiff Holguin should receive pre-judgment interest on a principal amount of $54,975.01 at a rate of nine percent per annum, totaling $13,111.54 as of November 8, 2024, the date of this report

and recommendation, with an additional $13.56 per day for every day thereafter until the Clerk of Court enters a final judgment.[13]

The earliest ascertainable date the cause of action existed for Plaintiff Coello is January 1, 2022, while the date the action was filed was January 1, 2023. (*See* ECF 1, Compl.) Thus, the midpoint date would be approximately July 2, 2022. I respectfully recommend that Plaintiff Coello should receive pre-judgment interest on a principal amount of $39,867.19 at a rate of nine percent per annum, totaling $8,467.19 as of November 8, 2024, the date of this report and recommendation, with an additional $9.83 per day for every day thereafter until the Clerk of Court enters a final judgment.[14]

The earliest ascertainable date the cause of action existed for Plaintiff Laskawski is October 1, 2020, while the date the action was filed was January 1, 2023. (*See* ECF 53, Laskawski Aff.) Thus, the midpoint date would be approximately November 15, 2021. I respectfully recommend that Plaintiff Laskawski should receive pre-judgment interest on a principal amount of $82,206.00 at a rate of nine percent per annum, totaling $22,121.63 as of November 8, 2024, the date of this report and recommendation, with an additional $20.27 per day for every day thereafter until the Clerk of Court enters a final judgment.[15]

---

[13]    New York law states that the endpoint for calculating prejudgment interest should be the "date of entry of final judgment." N.Y.C.P.L.R. § 5002; *see also Schipani v. McLeod,* 541 F.3d 158, 165 (2d Cir. 2008). The period from March 17, 2022 through November 8, 2024 is 948 days, or 2.65 years. The interest through November 8, 2024 is calculated as follows: $54,975.01 x 2.65 years x 0.09. The daily interest is $54,975.01 x 0.09/365.

[14]    The period from July 2, 2022 through November 8, 2024 is 861 days, or 2.36 years. The interest through November 8, 2024 is calculated as follows: $39,867.19 x 2.36 years x 0.09. The daily interest is $39,867.19 x 0.09/365.

[15]    New York law states that the endpoint for calculating prejudgment interest should be the "date of entry of final judgment." N.Y. C.P.L.R. § 5002; *see also Schipani v. McLeod,* 541 F.3d

F.    Post-Judgment Interest

Under 28 U.S.C. § 1961, Plaintiffs are entitled to post-judgment interest on their money judgment in a civil case recovered in a district court. Post-judgement interest is "calculated from the date of the entry of judgment, as a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

G.    Costs

The FLSA and the NYLL permit a successful plaintiff to recover costs and reasonable attorneys' fees. *See* 29 § U.S.C. 216(b); NYLL §§ 198, 663. Plaintiffs seek an award of both costs and reasonable attorneys' fees, composed of $929.55 in costs and $12,094.50 in attorneys' fees. (*See* ECF 70, Proposed Findings at 13.)

Costs that are reasonable are those that are incurred by the attorney and normally charged to the client. *See Burns*, 635 F. Supp. 3d at 285 (citing *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Plaintiffs have attached an invoice of costs in support of their request. (*See* ECF 72, Jason Mizrahi Decl. Ex C). The costs include filing fees and the costs for effecting service of process, which are the types of costs typically found to be reasonable. *See Farez v. Pinery Cleaners*, 22-CV-06728 (VSB) (SDA), 2023 WL 6977058 at*6 (S.D.N.Y. July 21, 2023). These costs listed in the invoice and sought by Plaintiffs amount to a total of $929.55. Thus, I respectfully recommend Plaintiffs be awarded $929.55 for reasonable costs.

---

158, 165 (2d Cir. 2008). The period from November 15, 2021 through November 8, 2024 is 1090 days, or 2.99 years. The interest through November 8, 2024 is calculated as follows: $82,206.00 x 2.99 years x 0.09. The daily interest is $82,206.00 x 0.09/365.

H.    Attorneys' Fees

Courts determine reasonable attorneys' fees based on several factors including labor and skill required, the difficulty of the issues, the customary hourly rate of the attorney, the attorneys' experience, reputation, and ability, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). Additionally, according to the "forum rule," courts typically look to the prevailing rates in the district in which the court sits to determine reasonable rates. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174-175 (2d Cir. 2009). Once the reasonable rate is determined, courts will multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *See Arbor Hill*, 522 F.3d at 186.

a.  *Reasonable Hourly Rate*

Plaintiffs have recommended an hourly rate of $450 for the services of Joshua D. Levin-Epstein ("Mr. Levin-Epstein"), $350 for the services of Eunon Jason Mizrahi ("Mr. Mizrahi"), and $50 for the services of Plaintiffs' counsel's paralegal, Alexis Abrego ("Ms. Abrego"). (*See* ECF 70, Proposed Findings at 13.) However, their attached invoice does not reflect that Mr. Levin-Epstein did any work on this case, so I recommend fees not be awarded for Levin-Epstein. (*See* ECF 72, Jason Mizrahi Decl. Ex. B). Courts in this Circuit have found a rate of $50 per hour to be reasonable for a paralegal. *See Muldowney v. Merit Recovery Sys., Inc.*, 2019 WL 2024760, at *6 (N.D.N.Y. May 8, 2019); *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 523 (S.D.N.Y. 2010). Thus, I recommend that Ms. Abrego's rate of $50 be deemed reasonable.

Courts have previously found Mr. Mizrahi's rate of $350 to be excessive in similar cases, especially in light of errors that complicated the Court's resolution of a default judgment. *See*

*Kennedy v. Imperial Sec. & Consultants LLC*, No. 23 CV 2790 (DLI) (LB), 2024 WL 3387261, at *7

(E.D.N.Y. May 1, 2024); *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 125 (E.D.N.Y. 2023);

*Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM) (JAM), 2023 WL 8003303,

at *12 (E.D.N.Y. Nov. 17, 2023). Here, Mr. Mizrahi also made filing errors, such as listing the

wrong case number and party names in various documents filed with the Court. As Mr.

Mizrahi's listed rate of $350 has been considered "at the high end" of what courts generally

award to senior associates in FLSA and NYLL cases, I respectfully recommend it should be

reduced to reflect the errors made. *See Zabrodin*, 702 F. Supp. 3d at 125. Thus, I respectfully

recommend that the rate be reduced from $350 to $250 per hour. *See Proano*, 2023 WL

8003303, at *12 (reducing Mr. Mizrahi's hourly rate from $350 to $250).

    *b. Reasonable Hours Expended*

  In determining the reasonable number of hours worked, "[t]he Court should examine

contemporaneous time records that identify, for each attorney, the hours expended on a task,

'with a view to the value of the work product of the specific expenditures to the client's

case.'" *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *12

(S.D.N.Y. Aug. 2, 2012) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)).

Plaintiffs have included an invoice including the hours billed by the attorney and paralegal,

which shows they spent a total of 36.2 hours in connection with this action. (*See* ECF 72, Jason

Mizrahi Decl. Ex. B). For similar cases, in which a default judgment is entered in an NYLL and

FLSA action, "the high-end amount of hours spent on cases . . . is no more than 55 hours total."

*Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *10 (E.D.N.Y.

Aug. 14, 2018) (internal quotation marks omitted) (quoting *Angamarca*, 2012 WL 3578781, at *13)), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Plaintiffs' counsel's 36.2 hours spent on this case is comparable to time approved as reasonable by courts in this Circuit for work on a default judgment. *See Rodriguez,* 2018 WL 7252949, at *11 (finding 39.6 hours reasonable); *Rodriguez v. Heinchon Marcus Distributors*, *LLC*, No. 16-CIV-1447 (VB) (PED), 2016 WL 7489067, at *9 (S.D.N.Y. Nov. 10, 2016) (finding 39.4 hours reasonable)*, report and recommendation adopted*, 2016 WL 7477559 (S.D.N.Y. Dec. 28, 2016). Thus, I respectfully recommend that the Court approve as reasonable the 36.2 hours spent by Plaintiffs' counsel.

When the reduced hourly rate of $250 for Mr. Mizrahi and hourly rate of $50 for Ms. Abrego are multiplied by the reasonable hours expended by each of them, the resulting attorneys' fees are $8,510.[16] Thus, I respectfully recommend that Plaintiffs be awarded $8,510 in attorneys' fees and that Plaintiffs be awarded a total of $9,439.55 in reasonable costs and reasonable attorney's fees.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motion for a default judgment should be granted and that judgment should be entered against Defendants in favor of Plaintiffs, with Plaintiffs to be awarded:

1.  Damages in the amount of $397,796.76, consisting of: (a) $21,450 in total unpaid minimum wages (b) $155,598.20 in total unpaid overtime premium wages; (c) $177,048.20 in total

---

[16]    Mr. Mizrahi billed 33.5 hours and Ms. Abrego billed 2.7 hours. Calculating $250 x 33.5, and adding that to $50 x 2.7 comes out to a total of $8,510.00.

liquidated damages (a+b); and (d) $43,700.36 in pre-judgment interest, plus an additional $43.66 per day for each day after November 8, 2024 until entry of the Clerk of Court's final judgment;[17]

2.  Reasonable attorneys' fees and costs in the amount of $9,439.55; and

3.  Post-judgment interest of pursuant to 28 U.S.C. § 1961.

DATED:       November 8, 2024
             New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

---

[17]     Holguin is entitled to a total of $123,061.56, plus $13.56 per day for every day after November 8, 2024 until entry of the Clerk of Court's final judgment; Coello is entitled to a total of $88,201.57, plus $9.83 per day for every day after November 8, 2024 until entry of the Clerk of Court's final judgment; and Laskawski is entitled to $186,533.63, plus $20.27 per day for every day after November 8, 2024 until entry of the Clerk of Court's final judgment.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).